FILED

2018 May-25  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| **ROY WHATLEY** | ) |
| **LISA WHATLEY** | )**Plaintiffs Demand Trial by Struck Jury** |
| | ) |
| Plaintiffs | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) |
| | ) |
| **SMITH & NEPHEW, INC.** | ) |
| | ) |

No. 1, whether singular or plural, the person(s) or entity(ies) who/which have done business as Smith & Nephew, Inc. and/or sold/marketed/distributed products under that brand;

No. 2, whether singular or plural, the person(s) or entity(ies) who/which designed the Smith & Nephew device, and its component parts, that was implanted into Mr. Whatley's hip;

No. 3, whether singular or plural, the person(s) or entity(ies) who/which manufactured the Smith & Nephew device, and its component parts, that was implanted into Mr. Whatley's hip;

No. 4, whether singular or plural, the person(s) or entity(ies) who/which assembled the Smith & Nephew device, and its component parts, that was implanted into Mr. Whatley's hip;

No. 5, whether singular or plural, the person(s) or entity(ies) who/which provided instructions for use of the Smith & Nephew device, and its component parts, that was implanted into Mr. Whatley's hip and/or issued warnings of the dangers associated with using the device;

No. 6, whether singular or plural, the person(s) or entity(ies) who/which imported the Smith & Nephew device, and its component parts, that was implanted into Mr. Whatley's hip;

No. 7, whether singular or plural, the person(s) or entity(ies) who/which undertook to test, inspect, or certify the Smith & Nephew device, and its component parts, that was implanted into Mr. Whatley's hip;

No. 8, whether singular or plural, the person(s) or entity(ies) who/which had any role in the distributive chain of the Smith & Nephew device, and its component parts, that was implanted into Mr. Whatley's hip;

No. 9, whether singular or plural, the person(s) or entity(ies) who/which is/are the successor in interest of any of the entities described above;

No. 10, whether singular or plural, the person(s) or entity(ies) who/which is/are the predecessor in interest of any of the entities described above.

| | |
|---|---|
| | ) |
| Defendants | ) |

## DIVERSITY JURISDICTION COMPLAINT

The Plaintiffs, **ROY WHATLEY** and **LISA WHATLEY**, allege against Defendants,

**SMITH & NEPHEW, INC.** and Fictitious Party Defendants No. 1 thru No. 10, as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiffs, Roy Whatley ("Mr. Whatley") and Lisa Whatley ("Mrs. Whatley"), are over the age of 19 and were, at all times material to the present action, residents of Lowndes County, Alabama.  They have mental capacity to handle their affairs and pursue the claims asserted herein.

2.      Defendant, Smith & Nephew, Inc. ("Smith & Nephew") is a foreign corporation organized and existing under the laws of Tennessee.  It does substantial business in the State of Alabama and within the Southern Division of the territorial jurisdiction of the U.S. District Court for the Northern District of Alabama.  It has purposefully directed its activities towards, and derived substantial profits from, the State of Alabama, and the Southern Division of the territorial jurisdiction of the U.S. District Court for the Northern District of Alabama.  Smith & Nephew, Inc. routinely sells products in Alabama and has continuous and systematic contacts with the State of Alabama.  Smith & Nephew designs and manufactures medical devices for use in hip replacement and resurfacing procedures. It is a global medical technology company, with its headquarters in England, a presence in more than 90 countries worldwide, and total sales of $4.8 billion in 2017. Its domestic headquarters are in Memphis, Tenn.

3.      Defendant, Smith & Nephew designed, tested, manufactured, assembled, inspected, imported, distributed, and/or sold the device described below and its component parts with the intention, expectation, and purpose that it would be distributed through the chain of commerce and that it would be ultimately sold and used in the State of Alabama.  Defendant has the requisite minimum contacts with the State of Alabama, and complete diversity of citizenship exists pursuant to 28 U.S.C. § 1332.

4.      Venue is proper in this division and district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this division and district, and because the Plaintiffs, separately and severally, seek to recover an amount in excess of $75,000.00, exclusive of interest and costs.

5.      Fictitious Party Defendants No. 1 thru No. 10, are those individuals or entities whose identity as proper party defendants is otherwise unknown to Plaintiffs at this time or, if their names are known to the Plaintiffs at this time, their identity as proper party defendants is not known to the Plaintiffs at this time, but their true names will be substituted by amendment when the aforesaid lacking knowledge is ascertained.

## FACTUAL BACKGROUND

### a. Design, Regulation, and Marketing of the R3 Acetabular System

6.      Defendant Smith & Nephew designs and manufactures medical devices for use in hip replacement and resurfacing procedures.

7.      On or about June 14, 2006, Smith & Nephew received Sec. 510(k) approval from the FDA to market its Class II REFLECTION 3 Acetabular Shell ("R3 Shell").  The 510(k) regulatory process is a "limited form of review" pursuant to 21 U.S.C. § 360(k), and acts as an easier alternative to the traditional Premarket Approval ("PMA") process. The more lenient 510(k) does not require clinical studies or other extensive testing. Instead, it is based on "substantial equivalence" to an earlier approval for a different device or devices, which are called the predicate device(s).

8.      One year later, on or about June 6, 2007, Smith & Nephew received 510(k) approval for the full Reflection 3 Acetabular System ("R3 Acetabular System"), consisting of the previously approved R3 Shell, and a liner made of cross-linked polyethylene.  In this system, the

R3 Shell serves as a replacement for the patient's acetabulum or hip socket, while the liner fits between the shell and a femoral head.  The shell and liner were intended to be used in connection with a femoral head made of cobalt and chrome, a femoral head sleeve made of cobalt and chrome, and a femoral stem, all designed and manufactured by Smith & Nephew.

9.      In November 2008, Smith & Nephew received approval from the FDA to market an optional metal liner as a supplement to one of its hip resurfacing systems, the Birmingham Hip Resurfacing System ("BHR System").  The BHR System had previously been granted PMA in May of 2006.

10.     Smith & Nephew named this metal liner the R3 metal liner ("R3 metal liner") despite the fact that the liner was not approved for use in the R3 Acetabular System.  The metal liner was approved for use only in the BHR System.

11.     By February of 2009, Smith & Nephew was marketing and promoting the R3 metal liner for use with the R3 Acetabular System, notwithstanding the fact that the liner was only approved for use with the BHR System.  Indeed, in February of 2009, Smith & Nephew issued a press release announcing "the introduction of a metal liner option for its R3 Acetabular System."  In doing so, Smith & Nephew made representations that the R3 metal liner was safe and effective when used as part of a total hip replacement device in combination with its R3 Shell and cobalt chrome femoral heads and sleeves.  For example, in the press release Smith & Nephew's president of orthopaedics, Joseph DeVivo, hailed the arrival of the R3 metal liner as proof of the company's position as a "leading innovator" in the industry.

12.     In June 2012, Smith & Nephew issued a recall for the R3 metal liner. The company's announcement, published on the FDA's website, stated that the reason for the recall was a higher than expected revision rate for patients. Smith & Nephew issued the recall only

after receiving numerous letters from the FDA warning the company not to sell the R3 metal liner for use in total hip replacement surgeries, and instead to restrict the liner to the BHR resurfacing system.

13.     At all times mentioned herein, the R3 Shell, when used in combination with a metal liner has been linked to complications, including, but not limited to, revision surgery.

14.     At all times mentioned herein, Defendants' femoral heads and femoral head sleeves made from cobalt chrome materials have been linked to complications, including, but not limited to, revision surgery.

15.     At all times mentioned herein, metal-on-metal hip implants have been linked to complications, including, but not limited to, failure and revision surgery.

### b. Background Medical Facts

16.     On or about June 13, 2011, Mr. Whatley underwent a left total hip replacement. The surgery was performed by David K. Moore, M.D. at UAB Hospital-Highlands located in Birmingham, Jefferson County, Alabama.

17.     The device that was implanted into Plaintiff's hip ("the device") consisted of the following component parts, all of which were designed and manufactured by Smith & Nephew: (1) an R3 Shell (lot number 71335560); (2) a cobalt chrome femoral head (lot number 10BW06880); (3) a cobalt chrome femoral head sleeve (lot number 10DT41770); (4) an anthology stem (lot number 11AM10273); and, (5) an R3 metal liner (lot number 09AW21347). This device was a metal-on-metal hip implant.

18.     Upon information and belief, Dr. Moore was aware of Smith & Nephew's marketing and promotional activities for the R3 metal liner for use in combination with its R3

Shell and cobalt chrome femoral heads and sleeves, despite the lack of FDA approval for the components being used together.

19.     Upon information and belief, a Smith & Nephew employee, agent, and/or representative was present during Mr. Whatley's surgery and selected and recommended that Dr. Moore implant the aforementioned device and its component parts, despite the lack of FDA approval for these components to be used together.  In doing so, the employee, agent and/or representative made representations that the component parts of the device would combine to make a high-quality, safe and effective hip replacement system.

20.     At all times material to this action, the Smith & Nephew employee, agent and/or representative was working within the line and scope of his duties as an employee, agent and/or representative.

21.     On April 26, 2017, Mr. Whatley underwent revision surgery in order to remove the defective and unreasonably dangerous device.

## COUNT ONE: AEMLD CLAIMS

22.     Plaintiffs re-adopt and re-allege all of the preceding paragraphs as if fully set out herein.

23.     This count is brought against Defendants pursuant to the Alabama common law, and specifically the Alabama Extended Manufacturers' Liability Doctrine.

24.     At the aforesaid time and place, and for some time prior thereto, Defendants, Smith & Nephew and Fictitious Party Defendants No. 1 thru No. 10, were engaged in the business of designing, manufacturing, assembling, testing, inspecting, marketing, distributing, and/or selling hip replacement devices throughout the United States, including the State of Alabama, for use by the general public for profit.

25.     Defendants designed, manufactured, promoted, assembled, tested, inspected, marketed, imported, distributed, and/or sold the device that was implanted into Mr. Whatley and its component parts.

26.     At the time the device was implanted into Mr. Whatley there was no unforeseeable substantial change to the device or its components from the time it left the possession of Defendants until when it reached Mr. Whatley, the ultimate user or consumer.  To the contrary, the device and its components were in substantially the same condition when it was implanted into Mr. Whatley as when it left the possession of the Defendants.

27.     At all times material to this Complaint, the device was in a defective and unreasonably dangerous condition.  Such condition included, but is not limited to, one or more of the following particulars:

a.      the device contained manufacturing defects, subjecting Mr. Whatley and others to risks, including, but not limited to, painful surgery to remove and replace the defective product;

b.      the device contained unreasonably dangerous design defects and was not reasonably safe when used in a foreseeable manner, subjecting Mr. Whatley and others to risks, including, but not limited to, painful surgery to remove and replace the defective product;

c.      the device was insufficiently tested;

d.      the device was not accompanied by adequate instructions and/or warnings to fully inform Mr. Whatley or his physician of the full nature or extent of the risks associated with its use;

e.      the device was improperly designed, manufactured, assembled, tested, inspected, promoted, marketed, distributed, and/or sold in violation of the Federal Food, Drug, and Cosmetic Act ("FDCA") and FDA regulations; and,

f.      the device was improperly designed, manufactured, assembled, tested, inspected, promoted, marketed, distributed, and/or sold without approval as required by and in violation of the FDCA and FDA regulations.

28.    At all times material to this Complaint, the R3 Shell, cobalt chrome femoral head and femoral head sleeve implanted into Mr. Whatley were in a defective and unreasonably dangerous condition.  Such condition included, but is not limited to, one or more of the following particulars:

a.    the R3 Shell, cobalt chrome femoral head and femoral head sleeve contained manufacturing defects, subjecting Mr. Whatley and others to risks, including, but not limited to, painful surgery to remove and replace the defective product;

b.    the R3 Shell, cobalt chrome femoral head and femoral head sleeve contained unreasonably dangerous design defects and was not reasonably safe when used in a foreseeable manner, subjecting Mr. Whatley and others to risks, including, but not limited to, painful surgery to remove and replace the defective product;

c.    the R3 Shell, cobalt chrome femoral head and femoral head sleeve were insufficiently tested;

d.    the R3 Shell, cobalt chrome femoral head and femoral head sleeve were not accompanied by adequate instructions, warnings and labels, including, but not limited to, instructions, warnings and labels regarding the risks and dangers of using the R3 Shell, cobalt chrome femoral head and femoral head sleeve in combination with a metal liner;

e.    the R3 Shell, cobalt chrome femoral head and femoral head sleeve were not accompanied by adequate instructions, warnings and labels indicating that the R3 Shell, cobalt chrome femoral head and femoral head sleeve should not be used in combination with a metal liner;

f.    the R3 Shell, cobalt chrome femoral head and femoral head sleeve were improperly promoted, marketed and sold to be used in combination with a metal liner;

g.    the R3 Shell, cobalt chrome femoral head and femoral head sleeve were improperly promoted, marketed and sold to be used in combination with the R3 metal liner in violation of the FDCA and FDA regulations; and,

h.    the R3 Shell, cobalt chrome femoral head and femoral head sleeve were improperly promoted, marketed and sold when Defendants had failed to comply with the FDA's post-marketing surveillance obligations.

29.     At all times material to this Complaint, the R3 metal liner implanted into Mr. Whatley was in a defective and unreasonably dangerous condition.  Such condition included, but is not limited to, one or more of the following particulars:

a.      the R3 metal liner contained manufacturing defects, subjecting Mr. Whatley and others to risks, including, but not limited to, painful surgery to remove and replace the defective product;

b.      the R3 metal liner contained unreasonably dangerous design defects and was not reasonably safe when used in a foreseeable manner, subjecting Mr. Whatley and others to risks, including, but not limited to, painful surgery to remove and replace the defective product;

c.      the R3 metal liner was insufficiently tested with the other components of the device because it was only approved for use with the BHR System;

d.      the R3 metal liner was not accompanied by adequate instructions, warnings and/or labels for use with the other components of the device because it was only approved for use with the BHR System;

e.      the R3 metal liner was improperly promoted, marketed and sold in violation of the FDCA and FDA regulations;

f.      the R3 metal liner was improperly promoted, marketed and sold for use in applications other than the BHR System for which it was approved in violation of the FDCA and FDA regulations, including, but not limited to, one or more of the provisions and regulations set forth below;

g.      The R3 metal liner was improperly sold, distributed and promoted for use in violation of the regulations prescribed under 21 U.S.C. §360j(e). 21 U.S.C. § 352(q);

h.      the R3 metal liner was improperly promoted, marketed and sold for use in combination with the R3 Shell, in violation of the FDCA and FDA regulations;

i.      the R3 metal liner was improperly promoted, marketed and sold after Defendants withheld from and misrepresented to the FDA information that was material and relevant to the performance of the liner especially when used in combination with the R3 Shell and/or a cobalt and chrome femoral head;

j.      the R3 metal liner was improperly promoted, marketed and sold after Defendants withheld from and misrepresented to the FDA information that resulted in inadequate warnings and/or instructions being approved by the FDA;

k.      the R3 metal liner was improperly promoted, marketed and sold in violation of the FDCA and FDA regulations, including, but not limited to, one or more of the following provisions and/or regulations: FDCA section 501(f)(1)(B), 21 U.S.C. § 351(f)(1)(B), 21 U.S.C. §§ 331(b), 352(q), FDCA section 520(g), 21 U.S.C. § 360j(e)(g), FDCA section 510(k), 21 U.S.C. § 360(e)(k), 21 CFR 807.81(a)(3)(ii), 21 CFR § 820 *et. seq.*, 21 U.S.C. §352(r), and/or 21 C.F.R.§ 814.39;

l.      the R3 liner was improperly misbranded, promoted, marketed, and sold to be used in applications other than with the BHR System and introduced into interstate commerce with major changes or modifications to its original use in violation of FDCA section 510(k), 21 U.S.C. § 360(e)(k), and/or 21 CFR 807.81(a)(3)(ii);

m.      the R3 metal liner was improperly promoted, marketed and sold after Defendants failed to report to the FDA relevant adverse health consequences of the R3 metal liner of which it became aware after obtaining approval for its use with the BHR System;

n.      the R3 metal liner was improperly promoted, marketed and sold after Defendants failed to comply with the FDAs premarket approval's monitoring and reporting requirements for reporting adverse outcomes caused by the R3 metal liner;

o.      the R3 metal liner was improperly marketed and sold after Defendants failed to comply with the FDAs post-marketing surveillance obligations regarding the safety and efficacy of the liner.

30.      Mr. Whatley and his physician used the device and its component parts in a way that was foreseeable to Defendants and as directed by Defendants.

31.      At all times material to this Complaint, the device and its component parts were defective, and Defendants knew that it was to be used by the user without inspection for defects contained therein.

32.      At the time that the device and its component parts were designed and manufactured, there were safer alternative designs that would have alleviated the defects stated above and would have prevented the risk of injury without substantially impairing the device's utility.  These safer alternative designs were economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge.

33.     As a direct and proximate result of the above defects and unreasonably dangerous conditions, Mr. Whatley suffered (1) a revision surgery and is at an increased risk for complications in the future, (2) permanent scarring and deformity, (3) physical pain, mental suffering, and mental anguish during and after the revision surgery which he will continue to suffer for the foreseeable future, (4) he has incurred and will continue to incur hospital, nursing, rehabilitation, and other medical bills and expenses, (5) he suffered a loss of his enjoyment of life, and (6) he has been caused to be permanently unable to pursue his normal and usual activities.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against the Defendants. Plaintiff's request an award of compensatory damages in an amount determined by a jury, together with interest, costs, and all other relief which may be just and proper.

## COUNT TWO: NEGLIGENCE

34.     Plaintiffs re-adopt and re-allege all of the preceding paragraphs as if fully set out herein.

35.     This count is brought against the Defendants pursuant to the Alabama common law tort of negligence.

36.     The Defendants and/or their employees and agents negligently designed, manufactured, tested, inspected, assembled, imported, promoted, marketed, distributed, and/or sold the device for the reasons stated in Count One above. Smith & Nephew further negligently misrepresented to Plaintiff, the medical community and the general public that the metal-on-metal device was safe. The Defendants knew, or in the exercise of reasonable care should have

known, that the device was defective and unreasonably dangerous.  The Defendants also acted negligently in other ways.

37.     The Defendants and/or their employees and agents negligently designed, manufactured, tested, inspected, assembled, imported, promoted, marketed, distributed, and/or sold the R3 Shell, cobalt chrome femoral head and femoral head sleeve implanted into Mr. Whatley for the reasons stated in Count One above.  Defendants negligently promoted, marketed, distributed and/or sold the R3 Shell, cobalt chrome femoral head, and femoral head sleeve to be used in combination with a metal liner.  The Defendants knew, or in the exercise of reasonable care should have known, that the R3 Shell, cobalt chrome femoral head and femoral head sleeve were defective and unreasonably dangerous.  The Defendants also acted negligently in other ways.

38.     The Defendants and/or their employees and agents negligently designed, manufactured, tested, inspected, assembled, imported, promoted, marketed, distributed, and/or sold the R3 metal liner implanted into Mr. Whatley for the reasons stated in Count One above. Defendants negligently promoted, marketed, distributed and/or sold the R3 metal liner for use in applications other than the BHR System for which it was approved in violation of one or more of the FDCA provisions and FDA regulations set forth above.  The Defendants knew, or in the exercise of reasonable care should have known, that the R3 metal liner was defective and unreasonably dangerous.  The Defendants also acted negligently in other ways.  Smith & Nephew's actions violated Alabama common laws, which constitute an independent and parallel violation of federal safety statutes and regulations as to the R3 metal liner, as well as the conditions established in the PMA Approval Order for the liner with which Defendant agreed to comply to obtain premarket approval of the device.

39.     During Mr. Whatley's surgery, Defendants negligently selected and directed that Dr. Moore implant the device and its component parts.  Defendants negligently misrepresented to Dr. Moore that the metal-on-metal device was safe. Defendants also negligently failed to warn Dr. Moore of the defects stated above and also negligently failed to instruct Dr. Moore of the dangers associated with using the device and its component parts in an off-label surgery. The Defendants also acted negligently in other ways.

40.     All of the foregoing negligent conduct of the Defendants was the direct and proximate cause of the injuries and damages suffered by Mr. Whatley as set forth in Count One. These injuries and damages could have been prevented if the Defendants had acted with reasonable care.

41.     The Defendants are vicariously liable for the torts committed by their employees and agents in the course and scope of their employment under the doctrine of respondeat superior.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against the Defendants. Plaintiff's request an award of compensatory damages in an amount determined by a jury, together with interest, costs, and all other relief which may be just and proper.

## COUNT THREE: WANTONNESS

42.     Plaintiffs re-adopt and re-allege all of the preceding paragraphs as if fully set out herein.

43.     This count is brought against the Defendants pursuant to the Alabama common law tort of wantonness.

44.     The Defendants and/or their employees and agents wantonly designed, manufactured, tested, inspected, assembled, imported, promoted, marketed, distributed, and/or sold the device for the reasons stated in Count One above. Smith & Nephew further wantonly misrepresented to Plaintiff, the medical community and the general public that the metal-on-metal device was safe. The Defendants knew, or in the exercise of reasonable care should have known, that the device was defective and unreasonably dangerous.  The Defendants also acted wantonly in other ways.

45.     The Defendants and/or their employees and agents wantonly designed, manufactured, tested, inspected, assembled, imported, promoted, marketed, distributed, and/or sold the R3 Shell, cobalt chrome femoral head and femoral head sleeve implanted into Mr. Whatley for the reasons stated in Count One above.  Defendants wantonly promoted, marketed, distributed and/or sold the R3 Shell, cobalt chrome femoral head, and femoral head sleeve to be used in combination with a metal liner.  The Defendants knew, or in the exercise of reasonable care should have known, that the R3 Shell, cobalt chrome femoral head and femoral head sleeve were defective and unreasonably dangerous.  The Defendants also acted wantonly in other ways.

46.     The Defendants and/or their employees and agents wantonly designed, manufactured, tested, inspected, assembled, imported, promoted, marketed, distributed, and/or sold the R3 metal liner implanted into Mr. Whatley for the reasons stated in Count One above. Defendants wantonly promoted, marketed, distributed and/or sold the R3 metal liner for use in applications other than the BHR System for which it was approved in violation of one or more of the FDCA provisions and FDA regulations set forth above.  The Defendants knew, or in the exercise of reasonable care should have known, that the R3 metal liner was defective and unreasonably dangerous.   The Defendants also acted wantonly in other ways.   Smith &

14

Nephew's actions violated Alabama common laws, which constitute an independent and parallel violation of federal safety statutes and regulations as to the R3 metal liner, as well as the conditions established in the PMA Approval Order for the liner with which Defendant agreed to comply to obtain premarket approval of the device.

47.     During Mr. Whatley's surgery, Defendants wantonly selected and directed that Dr. Moore implant the device and its component parts.  Defendants wantonly misrepresented to Dr. Moore that the metal-on-metal device was safe. Defendants also wantonly failed to warn Dr. Moore of the defects stated above and also wantonly failed to instruct Dr. Moore of the dangers associated with using the device and its component parts in an off-label surgery. The Defendants also acted wantonly in other ways.

48.     All of the foregoing wanton conduct of the Defendants was the direct and proximate cause of the injuries and damages suffered by Mr. Whatley as set forth in Count One. These injuries and damages could have been prevented if the Defendants had acted with reasonable care.

49.     The Defendants are vicariously liable for the torts committed by their employees and agents in the course and scope of their employment under the doctrine of respondeat superior.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against the Defendants. Plaintiff's request an award of compensatory and punitive damages in an amount determined by a jury, together with interest, costs, and all other relief which may be just and proper.

## COUNT FOUR: BREACH OF IMPLIED WARRANTY

50.     Plaintiffs re-adopt and re-allege all of the preceding paragraphs as if fully set out herein.

51.     This count is brought pursuant to Ala. Code § 7-2-314.

52.     The Defendants impliedly warranted that the device was reasonably fit and suitable for the purposes for which it was intended to be used, was free of defects, and was of merchantable quality.

53.     The Defendants impliedly warranted that the R3 Shell, cobalt chrome femoral head and femoral head sleeve implanted into Mr. Whatley were reasonably fit and suitable for the purposes for which it was intended to be used, free of defects and were of merchantable quality.

54.     The Defendants impliedly warranted that the R3 metal liner was reasonably fit and suitable for the purposes for which it was intended to be used, was free of defects, and was of merchantable quality.

55.     Defendants breached said warranties.

56.     Mr. Whatley and Dr. Moore were and are unskilled in the research, design, and manufacture of hip implant devices, and they reasonably relied entirely on the skill, judgment, and implied warranties of Defendants in using the device and its component parts.

57.     The breach of warranty by the Defendants was the direct and proximate cause of the injuries and damages suffered by Mr. Whatley as set forth in Count One above.  These injuries and damages could have been prevented if the Defendants had not breached their warranty.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against the Defendants. Plaintiff's request an award of compensatory damages in an amount determined by a jury, together with interest, costs, and all other relief which may be just and proper.

## COUNT FIVE: BREACH OF EXPRESS WARRANTY

58.     Plaintiffs re-adopt and re-allege all of the preceding paragraphs as if fully set out herein.

59.     At all times material to this Complaint, Defendants, orally and in writing, warranted that the device was safe, effective, fit, and proper for its intended use.

60.     At all times material to this Complaint, Defendants, orally and in writing, warranted that the R3 Shell, cobalt chrome femoral head and femoral head sleeve were safe, effective, fit, and proper for its intended use.

61.     At all times material to this Complaint, Defendants, orally and in writing, warranted that the R3 metal liner was safe, effective, fit, and proper for its intended use.  These statements extend to the metal liner being used in combination with its R3 Shell and cobalt chrome femoral heads and sleeves to form a total hip replacement device, even though it was only approved for use with the BHR System.

62.     In utilizing the device and its component parts, Mr. Whatley and Dr. Moore relied on the skill, judgment, representations, and foregoing express warranties of Defendants.

63.     Said warranties and representations were false.

64.     The breach of warranty by the Defendants was the direct and proximate cause of the injuries and damages suffered by Mr. Whatley as set forth in Count One.  These injuries and damages could have been prevented if the Defendants had not breached their warranty.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against the Defendants. Plaintiff's request an award of compensatory damages in an amount determined by a jury, together with interest, costs, and all other relief which may be just and proper.

## COUNT SIX: FRAUD

65.     Plaintiffs re-adopt and re-allege all of the preceding paragraphs as if fully set out herein.

66.     Defendants intentionally, recklessly, and/or mistakenly made false statements of material fact about the device and its component parts to Dr. Moore, other physicians, and the general public as described herein.   Specifically, Defendants and its employees, agents and representatives:

  a.     falsely misbranded, promoted and marketed the R3 metal liner as being approved for use in applications other than the BHR System, including the R3 Acetabular System;

  b.     made false representations that the component parts of the device were compatible and would combine to make a high-quality, safe and effective hip replacement system;

  c.     falsely represented that the device was a high-quality, safe, and effective hip replacement system; and,

  d.     falsely represented that the R3 metal liner was compatible, safe and effective when used as part of a total hip replacement device in combination with the R3 acetabular component and cobalt chrome femoral heads and sleeves.

67.     Defendants and their employees, agents and representatives made such statements knowing that they were false and/or without knowing whether they were true intending that Dr. Moore, other physicians, and the general public rely on the statements.

68.     Dr. Moore reasonably relied on the statement(s) and acted on the statement(s) by implanting the device and its component parts into Mr. Whatley.

69.     Defendants and their employees, agents and representatives also hid and withheld materials facts about the device and its component parts from Dr. Moore, other physicians, and the general public as described herein.  Specifically, Defendants and its employees, agents and representatives:

a.     hid/withheld the fact that the R3 metal liner was only approved for use in the BHR System;

b.     hid/withheld the fact that the R3 metal liner was not approved for use in combination with the R3 Shell and cobalt chrome femoral heads and sleeves;

c.     hid/withheld the fact that the component parts of the device were incompatible and would combine to make a dangerous, unsafe and ineffective hip replacement system;

d.     hid/withheld the fact that the component parts of the device were not approved for use in combination with each other;

e.     hid/withheld the fact that the device had not been adequately tested and/or approved; and,

f.     hid/withheld the known dangers and risks of using the R3 Shell, cobalt chrome femoral head and femoral head sleeve in combination with the R3 metal liner.

70.     Dr. Moore did not know of such material facts and acted by implanting the device and its component parts into Mr. Whatley.

71.      As a direct result of the fraudulent conduct of Defendants and their employees, agents and representatives, Mr. Whatley suffered damages as set forth in Count One.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against the Defendants. Plaintiff's request an award of compensatory and punitive damages in an amount determined by a jury, together with interest, costs, and all other relief which may be just and proper.

## COUNT SEVEN: LOSS OF CONSORTIUM AND LOSS OF SERVICES

72.     Plaintiffs adopt and re-allege all preceding paragraphs as if fully set out herein.

73.     Mrs. Whatley was at all times relevant to this Complaint the spouse of Mr. Whatley, and lived and cohabited with him at the time of his injuries through the present date.

74.     As a direct result of the negligent, wanton, and wrongful conduct of the Defendants, Mrs. Whatley was caused to suffer, and will continue to suffer in the future, loss of consortium and loss of services due to Mr. Whatley's injuries set forth above, all to the detriment of her marital relationship with Mr. Whatley.  Furthermore, Mrs. Whatley has necessarily paid and has become liable to pay for medical aid, treatment, and medications, and will necessarily incur further expenses of a similar nature in the future.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against the Defendants. Plaintiff's request an award of compensatory damages in an amount determined by a jury, together with interest, costs, and all other relief which may be just and proper.

## COUNT EIGHT: ALTER-EGO CLAIM

75.     Plaintiffs re-adopt and re-allege all of the preceding paragraphs as if fully set out herein.

76.     One or more of the Defendants controls the operation and fiscal activities of one or more of the others and operated as the same business.  These Defendants are alter-egos of one another, and each are liable for the others' tortious acts, including liability for all judgments rendered pursuant to Counts 1 thru 7 above.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request a judgment in their favor (1) that holds these Defendants liable to them for the judgments rendered against their alter-egos

on Counts 1 thru 7 above and (2) that holds these Defendants liable to them for the damage awards imposed on their alter-egos for the injuries and damages set forth in Counts 1 thru 7 above.

## COUNT NINE: SUCCESSOR LIABILITY CLAIM

77.     Plaintiffs re-adopt and re-allege all of the preceding paragraphs as if fully set out herein.

78.     One or more of the Defendants is the legal successor of one or more of the other Defendants, and, as such, it/they have succeeded to the liabilities of the others' tortious acts, including the liability for all claims stated against those Defendants in Counts 1 thru 7 above.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request a judgment in their favor (1) that holds the Defendants liable to them for the judgments rendered against their predecessors and/or successors on Counts 1 thru 7 above and (2) that holds Defendants liable to them for the damage awards imposed on their predecessors for the injuries and damages set forth in Counts 1 thru 7 above.

**\*\*Plaintiffs Request a Trial by Struck Jury\*\***

Attorney for the Plaintiff

*/s/ J.D. Marsh*
MICHAEL K. BEARD (BEA004)
JOHN D. MARSH (MAR229)
MARSH, RICKARD & BRYAN, P.C.
800 Shades Creek Pkwy
Suite 600-D
Birmingham, Alabama 35209
Phone: (205) 879-1981
Facsimile: (205) 879-1986
E-mail:  mbeard@mrblaw.com
              jdmarsh@mrblaw.com

**<u>SERVE DEFENDANT VIA CERTIFIED MAIL AS FOLLOWS</u>:**
Smith & Nephew, Inc.
%CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104